UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMMA NATION,<br><br>    Plaintiff,<br><br>v.<br><br>DONALD J. TRUMP, et al.,<br><br>    Defendants. | Case No. 18-cv-03984-HSG<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 29 |

Pending before the Court is Defendants' motion to dismiss Plaintiff's First Amended Complaint. *See* Dkt. No. 29 ("Mot."). For the following reasons, the Court **GRANTS** Defendants' motion to dismiss without leave to amend.

## I. BACKGROUND

### A. Factual Allegations

Plaintiff Emma Nation is a resident of Humboldt County, California. First Amended Complaint ("FAC"), Dkt. No. 12 ¶ 7. On August 10, 2011, Plaintiff began renting an apartment from Humboldt Bay Housing Development Corporation ("HBHDC"), which is a private corporation that receives funding from the U.S. Department of Housing and Urban Development ("HUD"). *Id.* ¶ 47. According to Plaintiff, HUD mandates that any recipient of its funds must maintain a zero-tolerance policy and evict or deny servicing any tenants who use controlled substances, including medical cannabis. *Id.* ¶ 23. In March 2016, HBHDC served Plaintiff with a sixty-day notice of tenancy termination based on a report that she possessed medical marijuana in her apartment. *Id.* ¶ 49; *see also id.* Ex. 10 (notice of termination). On July 10, 2018, Plaintiff was removed, along with her daughter, from her apartment; she remains homeless. *Id.* ¶ 52.

//

### B. Procedural Background

On July 2, 2018, Plaintiff commenced this action, naming as Defendants Donald Trump in his official capacity as President of the United States, the Office of the President of the United States, the United States of America, the Department of Justice, Jefferson Beauregard Sessions, III[1] in his official capacity as Attorney General, the Food and Drug Administration ("FDA"), Scott Gottlieb[2] in his official capacity as Commissioner of the FDA, HUD, Ben Carson in his official capacity as Secretary of HUD, and HBHDC acting as an agent for HUD. Dkt. No. 1. On August 9, 2018, Plaintiff, along with Rose Myers and Jane Roe, filed the FAC. *See* FAC. Myers and Roe, Dkt. No. 41, and HBHDC, Dkt. No. 28, were all eventually dismissed from the action without prejudice.

Plaintiff asserts six causes of action: (1) violation of the Ninth Amendment, (2) violation of the Fifth Amendment, (3) violation of the Fourth Amendment, (4) violation of the First Amendment, (5) violation of the Public Trust Doctrine, and (6) violation of the Tenth Amendment. FAC ¶¶ 55–83. Plaintiff seeks declaratory relief as to the unconstitutionality of the Controlled Substances Act regarding medical marijuana as well as an injunction against further violations of the Constitution. *Id.* at 31–32 (Prayer for Relief).

On December 21, 2018, Defendants moved to dismiss the FAC. *See* Mot. Plaintiff opposed, Dkt. No. 32 ("Opp."), and Defendants replied, Dkt. No. 33 ("Reply"). The Court held a hearing on March 28, 2019. *See* Dkt. No. 40.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure Rule 12(b)(1) allows a party to move to dismiss for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1).

The plaintiff has the burden to establish that subject matter jurisdiction is proper. *Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770, 778–79 (9th Cir. 2000); *see also Kokkonen v.*

---

[1] On November 7, 2018, Matthew Whitaker became Acting Attorney General, automatically substituting for former Attorney General Sessions under Federal Rule of Civil Procedure 25(d). On February 14, 2019, William Barr became Attorney General, automatically substituting for former Acting Attorney General Whitaker under Rule 25(d).

[2] On April 5, 2019, Norman E. Sharpless became Acting Commissioner of the FDA, automatically substituting for former Commissioner of the FDA Scott Gottlieb under Rule 25(d).

*Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378 (1994) (noting that "[i]t is to be presumed that a cause lies outside . . . [a federal court's] jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction") (citations omitted). To meet this burden, the pleading party must show "affirmatively and distinctly the existence of whatever is essential to federal jurisdiction." *Tosco Corp. v. Cmtys. for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001).

A Rule 12(b)(1) motion may be either facial, where the inquiry is confined to the allegations in the complaint, or factual, where the court is permitted to look beyond the complaint to extrinsic evidence. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004); *Savage v. Glendale Union High School Dist. No. 205*, 343 F.3d 1036, 1040 n. 2 (9th Cir. 2003). A facial challenge "asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

If a plaintiff fails to establish subject matter jurisdiction, "the court, on having the defect called to its attention or on discovering the same, must dismiss the case, unless the defect be corrected by amendment." *Tosco Corp.*, 236 F.3d at 499 (quoting *Smith v. McCullough*, 270 U.S. 456, 459 (1926)). Where the plaintiff cannot cure a jurisdictional defect by amendment, the court may dismiss the complaint without leave to amend. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

### III. DISCUSSION

Defendants contend that the Court lacks subject matter jurisdiction because Plaintiff has not administratively exhausted her claims, as is required by the Controlled Substances Act ("CSA"). *See* Mot. at 1. The Court agrees and dismisses Plaintiff's case without leave to amend because she has not alleged, and cannot allege, exhaustion, as required by the CSA.

#### A. The Controlled Substances Act Requires Exhaustion of Administrative Remedies Before Bringing Suit in Federal Court

The CSA classifies marijuana as a Schedule I drug—the most tightly controlled of the five levels of drug classification. 21 U.S.C. § 801 *et seq.* Congress established a process for reclassification, vesting the Attorney General with the power to reschedule a drug "on the record after opportunity for a hearing." *See* 21 U.S.C. § 811(a). Before initiating proceedings under

§ 811(a), the Attorney General must request a scientific and medical evaluation from the Secretary of Health and Human Services ("HHS"), whose findings with respect to scientific and medical matters are considered binding. *Id.* § 811(b). The Attorney General delegated reclassification responsibility under the CSA to the Drug Enforcement Administration ("DEA"). *See* 28 C.F.R. § 0.100(b).

The CSA also provides an avenue for interested parties to petition the DEA to reclassify drugs, consistent with the medical and scientific data provided by HHS. *See* 21 U.S.C. § 811(a) (providing that the Attorney General may reclassify drugs after an on the record hearing "on the petition of any interested party"); *see also* 21 C.F.R. § 1308.43(a) (providing that "[a]ny interested person may submit a petition to initiate proceedings for the issuance, amendment, or repeal of any rule or regulation issuable pursuant to the provisions of section 201 of the Act"). If a petitioner receives an adverse ruling from the DEA, the CSA provides for judicial review in the Court of Appeals:

> All final determinations, findings, and conclusions of the Attorney General under this subchapter shall be final and conclusive decisions of the matters involved, except that any person aggrieved by a final decision of the Attorney General may obtain review of the decision in the United States Court of Appeals for the District of Columbia or for the circuit in which his principal place of business is located upon petition filed with the court and delivered to the Attorney General within thirty days after notice of the decision. Findings of fact by the Attorney General, if supported by substantial evidence, shall be conclusive.

21 U.S.C. § 877.

Interested parties have petitioned for reclassification on multiple occasions, but marijuana remains a Schedule I drug. *See Gonzales v. Raich*, 545 U.S. 1, 15 (2005). For example, the DEA denied rescheduling petitions in both 2016 and in 2011. *See* Denial of Petition to Initiate Proceedings to Reschedule Marijuana, 81 Fed. Reg. 53,767, 53,767 (Aug. 12, 2016); Denial of Petition to Initiate Proceedings to Reschedule Marijuana, 76 Fed. Reg. 40,552, 40,552 (July 8, 2011). The D.C. Circuit upheld both denials. *See Krumm v. DEA*, 739 F. App'x 655 (D.C. Cir. 2018); *Ams. for Safe Access v. DEA*, 706 F.3d 438 (D.C. Cir. 2013).

The Court agrees with other courts that have found that the process set forth in the CSA is

the exclusive method to challenge classification decisions. *See Washington v. Barr*, 925 F.3d 109, 117 (2d Cir. 2019) (concluding that text and structure of CSA establish that "Congress wanted aggrieved parties to pursue reclassification through agencies, and not, in the first instance, through the federal courts"); *Alt. Cmty. Health Care Coop., Inc. v. Holder*, No. 11 Civ. 2585, 2012 WL 707154, at *6 (S.D. Cal. Mar. 5, 2012) (denying leave to amend to add challenge to scheduling of marijuana because the "comprehensive reclassification scheme" of the CSA "provides for the exclusive means of challenging classification decisions"), *aff'd sub nom. Sacramento Nonprofit Collective v. Holder*, 552 F. App'x 680 (9th Cir. 2014); *Krumm v. Holder*, No. 08 Civ. 1056, 2009 WL 1563381, at *8 (D.N.M. May 27, 2009) ("The nature of the administrative process that Congress provides for rescheduling in the CSA, viewed in the context of the overall administrative scheme for dealing with controlled substances, reveals that Congress intended the process set forth in 21 U.S.C. § 811 to be the exclusive means by which an interested party can seek rescheduling."); *see also United States v. Burton*, 894 F.2d 188, 192 (6th Cir. 1992) ("[I]t has repeatedly been determined, and correctly so, that reclassification is clearly a task for the legislature and the attorney general and not a judicial one.").

When a plaintiff fails to pursue reclassification under the CSA's mandatory scheme, federal courts lack jurisdiction over any attempts to challenge a classification. *See Washington v. Sessions*, No. 17 CIV. 5625 (AKH), 2018 WL 1114758, at *4 (S.D.N.Y. Feb. 26, 2018) (holding that a plaintiff who seeks to challenge the federal classification of marijuana or otherwise seeks "a declaration that the CSA is unconstitutional" is required to "exhaust prescribed administrative remedies before seeking relief from the federal courts"), *aff'd but held in abeyance pending administrative review*, 925 F.3d at 122; *id.* at 123 (noting that "it is common ground that the case was properly dismissed under 12(b)(1) for failure to exhaust remedies") (Jacobs, J., dissenting); *Welch v. United States*, No. 16 Civ. 503, 2017 WL 3763857, at *4 (W.D. Va. Aug. 30, 2017) (dismissing challenge to classification of marijuana as Schedule I drug because the plaintiff "has not demonstrated that he has exhausted this administrative remedy and a scheduling decision is not a legal determination that an Article III court is qualified to make without an administrative record to review"); *Olsen v. Holder*, 610 F. Supp. 2d 985, 994–95 (S.D. Iowa 2009) (dismissing

5

complaint for lack of subject matter jurisdiction because the "lawsuit amounts to nothing more than an attempt to circumvent the clear Congressional intent to have scheduling determinations made by the Attorney General, consistent with the factors in § 811 and subject to review only by the Courts of Appeals"). Moreover, the CSA provides that challenges to agency decisions must be brought in a court of appeals, not in a district court. *See* 21 U.S.C. § 877.

In sum, the Court concludes that it must dismiss the complaint for lack of subject matter jurisdiction if Plaintiff failed to exhaust her administrative remedies by petitioning the DEA for reclassification. *See Krumm*, 2009 WL 1563381, at *8–9 (holding that plaintiff "must exhaust his administrative remedies before bringing suit in federal court" and dismissing for lack of subject matter jurisdiction).

**B.   Plaintiff's Claims Must Be Dismissed for Failing to Allege Exhaustion of Administrative Remedies**

Plaintiff challenges the CSA's classification of marijuana as a Schedule I drug, which she says led to her eviction and caused all of the harms alleged in her complaint. That challenge falls within the exhaustion requirement. Because Plaintiff has not alleged exhaustion of administrative remedies, her action is barred for lack of subject matter jurisdiction. *See Washington*, 2018 WL 1114758, at *4.

**i.   Plaintiff's Claims Fall Within the Exhaustion Requirement**

Plaintiff argues that she "does not challenge the scheduling of marijuana in the CSA," but rather challenges "the application of the CSA's prohibition of medical marijuana in the State of California." Opp. at 1. But these arguments lead the Court to the same conclusion: that Plaintiff's entire case depends on the CSA's classification of marijuana as a Schedule I drug, any challenge to which must first be brought in an administrative proceeding.[3]

In her complaint, Plaintiff expressly challenges the scheduling of marijuana, alleging that

---

[3] To the extent Plaintiff is asserting that "[t]here is no rational basis for the CSA to . . . apply in . . . California relative to medical cannabis," Opp. at 10, that argument is foreclosed by binding Supreme Court precedent holding "that the CSA 'is a valid exercise of federal power' under the Commerce Clause, even as applied to prohibit the possession or use of marijuana 'produced and consumed locally' for medical purposes." *See Raich*, 545 U.S. at 9.

6

"[t]he Federal Government can no longer rationally . . . declar[e] cannabis having 'no currently accepted medical use,'" FAC ¶ 2, that "[t]he Federal Government has formally recognized that cannabis does not meet two of the three Schedule I requirements," *id.* ¶ 29, and that "the CSA relative to medical cannabis scheduling . . . is . . . not within the powers delegated to the United States," *id.* ¶ 81. These legal theories are squarely within the CSA's exhaustion requirement.

Moreover, all of Plaintiff's causes of action rely on a successful challenge to the scheduling of marijuana, which Plaintiff herself acknowledges. *See* FAC ¶ 8 (alleging that the "proximate cause of Ms. Nation's injury is the Federal government refusing to respect California's recognition that cannabis provides the medical benefits to some patients"). The first cause of action—the Ninth Amendment violation—is based on the alleged deprivation of an unenumerated right reserved by the people to medicate with cannabis, which is in turn premised on "the Federal Government's denial and disparagement of the right" by classifying marijuana as a Schedule I drug. *Id.* ¶¶ 57–59. Plaintiff's second cause of action—the Fifth Amendment violation—is similarly dependent upon the theory that the federal prohibition of medical cannabis "depriv[es] medical cannabis users of their fundamental rights . . . to life, liberty, and property" by causing them injury in a "black market" that thrives as a result of the CSA. *Id.* ¶¶ 5, 63–64. Plaintiff's third cause of action—the Fourth Amendment violation—relies on the unconstitutionality of HUD's alleged no-tolerance policy against the use of medical marijuana which, again, turns on a challenge to the CSA's classification of marijuana. *Id.* ¶¶ 68–70. The fourth cause of action—the First Amendment violation—is also built upon the federal prohibition, which allegedly chills Plaintiff from "exercising her right to express a belief that cannabis is medicine and to associate with groups or people who also believe or advocate cannabis is medicine." *Id.* ¶¶ 72–73. The fifth cause of action—violation of the Public Trust Doctrine—again turns on the classification of marijuana, which, according to Plaintiff, has caused "environmental degradation of National Parks situated in [Plaintiff's community]," thereby "denying [local] residents . . . as well as all citizens of the United States the right to have National Parks preserved" with a unique impact on "the economic sustainability of [Plaintiff's] community." *Id.* ¶¶ 75–76. As for the sixth cause of action, Plaintiff expressly challenges the CSA's scheduling of marijuana as "lack[ing] a rational

7

basis" and argues against its application in "states recognizing medical cannabis" given the Tenth Amendment. *Id.* ¶¶ 80–83. In short, each of Plaintiff's causes of action relies on the premise that marijuana is improperly classified as a Schedule I drug.

Plaintiff also attempts to frame her action as a challenge to "the CSA as interpreted by HUD regulations" instead of a challenge to the CSA itself. Opp. at 2–3, 16. But the FAC does not explain how HUD regulations *interpret* the CSA to deny housing to medical marijuana users. Nor could it if Plaintiff were allowed leave to amend, because the statutory framework simply incorporates the term "controlled substances" as defined in the CSA. *See* 42 U.S.C. §§ 1437f(f)(5), 13662(a)(1)–(2).

Put most simply, Plaintiff's theory is that if marijuana were not classified as a Schedule I drug, she would not have been evicted from HBDHC. Thus, Plaintiff must have exhausted administrative remedies prior to bringing suit. Otherwise, the action is barred for lack of subject matter jurisdiction.

### ii. Plaintiff Has Not Exhausted Administrative Remedies

Plaintiff does not allege that she petitioned the DEA to reschedule marijuana. At the hearing on the motion to dismiss, counsel for Plaintiff confirmed that she had not attempted to pursue administrative remedies and would not plead exhaustion if given leave to amend. Because Plaintiff fails to allege exhaustion of administrative remedies, this Court does not have subject matter jurisdiction and her claim is barred in its entirety.

### C. Constitutional Arguments

Plaintiff also attempts to avoid the exhaustion requirement by invoking the Tenth Amendment and framing the application of the CSA in California as unconstitutional commandeering. FAC ¶¶ 78–83; Opp. at 14–16. These arguments do not preclude the application of the exhaustion requirement nor cure the lack of subject matter jurisdiction.

First, the Supreme Court has held that the CSA "is a valid exercise of federal power" under the Commerce Clause, even as applied to prohibit the possession or use of marijuana "produced and consumed locally" for medical purposes and that it does not violate the Tenth Amendment. *Raich*, 545 U.S. at 9.

Second, in general terms, the anti-commandeering doctrine prohibits Congress from requiring (or commandeering) state legislatures or state officials to take actions to implement a federal program. *See Printz v. United States*, 521 U.S. 898, 935 (1997); *New York v. United States*, 505 U.S. 144, 188 (1992). Here, statutes dictate what private actors (not states or state officials) may do. *See, e.g.*, 42 U.S.C. § 13662. Thus, the HUD rules do not violate the anti-commandeering principle. *See New York*, 505 U.S. at 167 (noting that Congress can use its spending power to attach conditions to the receipt of funds).

The Court finds that neither the Tenth Amendment nor the anti-commandeering doctrine makes the exhaustion requirement inapplicable.

### D. Leave to Amend

The Court denies leave to amend because it finds that amendment would be futile. Plaintiff's counsel confirmed at the hearing that Plaintiff had not attempted to pursue administrative remedies and that Plaintiff would not plead exhaustion if given leave. Therefore, amendment would not cure the Court's lack of subject matter jurisdiction.

## IV. CONCLUSION

Plaintiff has failed to exhaust her administrative remedies and thus the Court does not have subject matter jurisdiction over her claims. The Court need not reach the other issues raised in the First Amended Complaint or in the motion to dismiss. Because amendment would be futile, the Court **GRANTS** the motion to dismiss without leave to amend. The Clerk is directed to close the case and enter judgment in favor of Defendants.

**IT IS SO ORDERED.**

Dated: 7/18/2019

HAYWOOD S. GILLIAM, JR.
United States District Judge